[Cite as *Dayton v. State*, 2022-Ohio-4412.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF DAYTON, OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28818 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-3464 |
| | : | |
| STATE OF OHIO | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of December, 2022.

. . . . . . . . . . .

JOHN C. MUSTO, Atty. Reg. No. 0071512, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 101 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

GARRETT M. ANDERSON, Atty. Reg. No. 0100121 & IRIS JIN, Atty. Reg. No. 0092561, 30 East Broad Street, 16th Floor, Columbus, Ohio 43215
      Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} The State of Ohio appeals from a judgment of the Montgomery County Court of Common Pleas, which sustained in part and overruled in part the City of Dayton's motion for summary judgment regarding whether certain statutory provisions were unconstitutional and sustained in part and overruled in part the State's motion for summary judgment. This matter is before us on remand from the Ohio Supreme Court, which recently vacated our opinion in *City of Dayton v. State of Ohio*, 2021-Ohio-967, 170 N.E.3d 502 (2d Dist.) ("*Dayton I*") and remanded based on its holding in *Newburgh Hts. v. State*, Ohio Slip Opinion No. 2022-Ohio-1642, __ N.E.3d __.

{¶ 2} We set forth the history of the case in *Dayton I*, and repeat it herein in pertinent part:

On July 29, 2019, Dayton filed a Verified Complaint for Declaratory Judgment and Preliminary and Permanent Injunction, which requested that the trial court enjoin the enforcement of certain newly enacted provisions of Am.H.B. No. 62 (H.B. 62) on the grounds that the provisions violated Article XVIII, Section 3 of the Ohio Constitution, otherwise known as the "Home Rule Amendment." Specifically, Dayton asserted that the contested provisions of H.B. 62 unconstitutionally limited its Home Rule authority to implement a traffic law photo-monitoring enforcement program by implementing the following statutory provisions: 1) reinstating the S.B. 342 requirement that a law enforcement officer be present at every photo-

monitoring device at all times while the device is in operation, R.C. 4511.093(B)(1); 2) reducing Dayton's local government fund allocation by the amounts collected from drivers for violations recorded by the photo-monitoring enforcement program and eliminating local government funds completely for municipalities that failed to report revenues from the program to the State, R.C. 5747.502(C), R.C. 5747.502(D), and R.C. 5747.502(F); 3) eliminating municipalities' ability to appoint administrative hearing officers to adjudicate photo-monitoring program tickets and conferring "exclusive jurisdiction" over such actions to municipal and county courts, R.C. 1901.20(A)(1), R.C. 1907.02(C); and 4) requiring municipalities to provide advance and non-recoverable court deposits to cover "all applicable court costs and fees" for civil actions related to the photo-monitoring program, R.C. 4511.096(C), R.C. 4511.099(A).

On January 17, 2020, the State filed a motion for summary judgment, in which it argued that Dayton had the burden to establish that the contested provisions of H.B. 62 were unconstitutional. The State also argued that the General Assembly had the exclusive power to define the jurisdiction of lower courts and to provide for their maintenance and had the express constitutional authority to decide state spending. The State further claimed that the contested provisions of H.B. 62 did not violate the Home Rule Amendment since the provisions constituted general laws. Lastly, the State argued that Dayton's additional constitutional arguments failed

because: 1) the unconstitutional conditions doctrine did not apply and had not been violated; 2) Dayton had no rights under its remaining constitutional challenges; and 3) Dayton had no other constitutional claims because the contested provisions did not violate the retroactivity clause, the one-subject rule, the uniformity clause, and/or the void for vagueness doctrine.

On January 24, 2020, Dayton filed a motion for summary judgment, arguing that the contested provisions of H.B. 62 violated the Home Rule Amendment because the contested provisions solely limited Dayton's legislative power and did not prescribe rules of conduct upon citizens and the Home Rule Amendment prohibited limitations on municipal authority. Dayton also argued that the contested provisions imposed unconstitutional conditions, were unconstitutionally retroactive, violated the void for vagueness doctrine, violated the uniformity clause, violated the one-subject rule, and violated the separation of powers doctrine.

On May 27, 2020, the trial court sustained in part and overruled in part Dayton's motion for summary judgment and also sustained in part and overruled in part the State's motion for summary judgment. The trial court found that all of the contested provisions in H.B. 62, R.C. 4511.093, R.C. 5747.502(C), (D), (F), R.C. 4511.099(A), R.C. 1901.20(A)(1), R.C. 1907.02(C), and R.C. 4511.096, were unconstitutional. The trial court found that all of the contested provisions, with the exception of R.C. 1901.20(A)(1) and R.C. 1907.02(C), were unconstitutional violations of the

Home Rule Amendment. Specifically, the trial court found that the restrictions in R.C. 5747.502 requiring the collection and reporting of civil fines and penalizing Dayton for operating a photo-monitoring program violated the Home Rule Amendment because they did not serve an overriding statewide interest and failed to prescribe rules of conduct upon citizens in general. With respect to the provisions of R.C. 4511.099(A) and R.C. 4511.096 requiring Dayton to file every notice of liability issued with the municipal court and deposit a non-refundable fee, including a filing fee and court costs for every notice, the trial court ruled that these provisions also violated the Home Rule Amendment because they did not serve an overriding statewide interest and failed to prescribe rules of conduct upon citizens in general. The trial court further found that the provisions limited Dayton's legislative authority in that it controlled the procedure Dayton must follow when issuing notices of liability without serving an overriding statewide interest and without prescribing rules of conduct upon citizens in general. The trial court held that R.C. 1901.20(A)(1) and R.C. 1907.02(C) were general laws that did not violate the Home Rule Amendment.

The trial court also found that all of the contested provisions in H.B. 62 unconstitutionally violated the one-subject rule, including R.C. 1901.20(A)(1) and R.C. 1907.02(C). While noting that the General Assembly has wide powers when enacting legislation, the trial court stated, however, that sections of an appropriation bill violate the one-subject rule

when they fail to share a common purpose with and have no discernible, practical, or rational relationship to other provisions in the bill. Therefore, the trial court found that the contested provisions in H.B. 62 were not related to the transportation budget, but rather were inserted as last minute riders after having been voted down by the state senate during the committee process. The trial court found that the contested provisions were not at all related to the appropriation of funds for transportation purposes, thus violating the one-subject rule and rendering the contested provisions unconstitutional. The trial court sustained the State's motion for summary judgment with respect to Dayton's other constitutional arguments.

*Id.* at ¶ 2-6.

**{¶ 3}** The State appealed the trial court's judgment and, on March 26, 2021, we affirmed in part and reversed in part the judgment of the trial court. In *Dayton I*, 2021-Ohio-967, 170 N.E.3d 502, we held that the trial court did not err when it granted the City of Dayton's motion for summary judgment related to the constitutionality of the following provisions of H.B. 62: R.C. 4511.093(B)(1), R.C. 5747.502(C), R.C. 5747.502(D), R.C. 5747.502(F), R.C. 4511.096(C), and R.C. 4511.099(A). Specifically, we held that the trial court had correctly found that the provisions were not general laws and that they violated the city's authority under the Home Rule Amendment. We also found that the record established that a conflict existed between the city's local ordinances setting forth its photo traffic enforcement program and these provisions of H.B. 62. Lastly, we held that the trial court had erred when it found that the provisions enacted in H.B. 62 at R.C.

1901.20(A)(1) and R.C. 1907.02(C) violated the one-subject rule and in denying the State's motion for summary judgment related to the constitutionality of those provisions. Notably, the General Assembly re-enacted R.C. 4511.093(B)(1), the "officer present" provision, in H.B. 62, but we stated that we need not address this section because the Ohio Supreme Court had already declared it to be unconstitutional. *Id.* at ¶ 22.

{¶ 4} On May 19, 2022, the Ohio Supreme Court issued its decision in *Newburgh*, Ohio Slip Opinion No. 2022-Ohio-1642, __ N.E.3d __, wherein the court held that R.C. 5747.502, the spending setoff provision, does not conflict with Home Rule authority because it does not prohibit municipalities from enforcing their traffic laws with cameras. *Newburgh* also held that the deposit requirement in R.C. 4511.099 does not conflict with Home Rule authority because, although it may make litigating violations based on traffic cameras more expensive for municipalities, it does not prohibit municipalities from using cameras to enforce their traffic laws. Accordingly, the Supreme Court vacated our judgment in *Dayton I* in its entirety and remanded the case to this court for application of its holding in *Newburgh*. *See Dayton v. State,* 167 Ohio St.3d 565, 2022-Ohio-2073,195 N.E.3d 130, ¶ 1.

{¶ 5} The State's appeal is now properly before this court on remand.

### Statutory History

{¶ 6} On June 12, 2002, Dayton enacted Ordinance 30114-02, which authorized an "automated traffic control photographic system" (ATCPS) for placement at intersections throughout the city. Initially, the system only provided for the enforcement of red-light violations. Subsequently, on February 17, 2010, the system was modified to

provide for the enforcement of speed violations as well (Ordinance 30965-10). The ordinances were codified in Dayton R.C.G.O. 70.21. Dayton states that the purposes of the ATCPS were to reduce the number of red light and speeding violations and automobile accidents in the city and to conserve limited police resources.

{¶ 7} Am.Sub.S.B. No. 342 was signed into law on December 19, 2014, and became effective on March 23, 2015. The following Revised Code sections were enacted as a result of S.B. 342's passage: R.C. 4511.092; 4511.093; 4511.095; 4511.096; 4511.097; 4511.098; 4511.099; 4511.0910; 4511.0911; 4511.0912; 4511.0913; 4511.0914; and 4511.204(C)(2). Viewed collectively, the new sections provided a comprehensive definition section (R.C. 4511.092) and expanded upon existing requirements for municipalities that employ the use of traffic photo-monitoring systems.

{¶ 8} Significantly, in *City of Dayton v. State*, 151 Ohio St.3d 168, 2017-Ohio-6909, 87 N.E.3d 176, Dayton challenged the constitutionality of certain provisions contained in S.B. 342 on the grounds that they violated Article XVIII, Section 3 of the Ohio Constitution, the Home Rule Amendment. In its complaint in that case, Dayton specifically challenged the requirement in R.C. 4511.093(B)(1) that a law enforcement officer be present at the location of any traffic photo-monitoring device while it was being operated. Dayton also challenged R.C. 4511.095(A)(2), the provision which required that a local authority conduct a public information campaign and safety study of the location under consideration for the placement of a new device before any new photo-monitoring equipment could be deployed. In Dayton's motion for summary judgment in that case, in addition to arguing that R.C. 4511.093(B)(1) and 4511.095(A)(2) were unconstitutional,

as argued in its complaint, Dayton also asserted that R.C. 4511.0912 violated the Home Rule Amendment because it prohibited municipal authorities from issuing speeding tickets for violations recorded by traffic photo-monitoring devices unless the individual was driving more than six miles per hour above the speed limit in a school zone and/or park or ten or more miles per hour above the speed limit in any other location. Upon review, the Ohio Supreme Court held that the contested provisions in S.B. 342 violated the Home Rule Amendment and struck down the offending provisions. *Id.* at ¶ 34.

{¶ 9} Thereafter, the Ohio General Assembly enacted H.B. 62, which was the transportation budget bill for Ohio for the fiscal years 2019 through 2021. As previously stated, Dayton argued that the contested provisions of H.B. 62 unconstitutionally limited its Home Rule authority to implement a traffic photo-monitoring enforcement program by implementing the following statutory provisions: 1) reinstating the S.B. 342 requirement that a law enforcement officer be present at every photo-monitoring device at all times while the device is in operation, R.C. 4511.093(B)(1); 2) reducing Dayton's local government fund allocation by the amounts collected from drivers for violations recorded by the photo-monitoring enforcement program and eliminating local government funds completely for municipalities that fail to report revenues from the program to the State, R.C. 5747.502(C), R.C. 5747.502(D), and R.C. 5747.502(F) (the spending setoff); 3) eliminating municipalities' ability to appoint administrative hearing officers to adjudicate photo-monitoring program tickets and conferring "exclusive jurisdiction" over such actions to municipal and county courts, R.C. 1901.20(A)(1), R.C. 1907.02(C); and 4) requiring municipalities to provide advance and non-recoverable court deposits to cover "all

applicable court costs and fees" for civil actions related to the photo-monitoring program, R.C. 4511.096(C), R.C. 4511.099(A) (the deposit requirement).[1]

**Standard of Review**

{¶ 10} This Court has previously noted:

When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234, ¶ 11 (quoting *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997)) (citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

Civ.R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 463, 880 N.E.2d 88 (2008). Summary judgment is proper when the trial court finds: "(1) that there is no genuine

---

[1] As previously noted, the Ohio Supreme Court found that the contested provisions of H.B. 62, R.C. 5747.502 (the spending setoff) and R.C. 4511.099 (the deposit requirement), do not conflict with municipal traffic camera ordinances and therefore do not violate the Home Rule Amendment.

issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90-CA-96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehous[ing] Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 45 (1978)).   The initial burden is on the moving party to show that there is no genuine issue of material fact.   *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93, 662 N.E.2d 264 (1996).   Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings.   *Dotson v. Freight Rite, Inc.,* 2d Dist. Montgomery No. 25495, 2013-Ohio-3272, ¶ 41 (citation omitted).

*Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2d Dist. Montgomery No. 25830, 2014-Ohio-1973, ¶ 17-18.

{¶ 11} The State's first assignment of error is as follows:

THE TRIAL COURT ERRED IN FINDING STATE STATUTES THAT REQUIRE MUNICIPALITIES TO FILE THEIR TRAFFIC-CAMERA CITATIONS AND PAY A FILING FEE TO THE COURT THAT HAS EXCLUSIVE JURISDICTION OVER THEM, AND THAT REDUCE THE AMOUNT OF STATE MONEY THEY RECEIVE IF THEY OPERATE TRAFFIC-CAMERA PROGRAMS, CONFLICT WITH MUNICIPAL-HOME-

RULE AUTHORITY SUCH THAT THEY VIOLATE THE HOME RULE AMENDMENT.

{¶ 12} In its first assignment, the State contends that the trial court erred when it held that the contested statutory provisions that require municipalities to file their traffic camera citations with the court and to pay a filing fee to the court and that reduce the amount of state money municipalities receive if they operate a traffic camera program violate the Home Rule Amendment.

### The Home Rule Amendment

{¶ 13} Under the Home Rule Amendment to the Ohio Constitution, "[m]unicipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, *as are not in conflict with general laws.*" Article XVIII, Section 3, Ohio Constitution.

{¶ 14} The Home Rule Amendment provides municipalities with the "broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest." *State ex rel. Morrison v. Beck Energy Corp.*, 143 Ohio St.3d 271, 2015-Ohio-485, 37 N.E.3d 128, ¶ 14, citing *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 212, 80 N.E.2d 769 (1948). Therefore, a municipal ordinance must yield to a state statute if 1) the ordinance is an exercise of police power, rather than of local self-government; 2) the statute is a general law; and 3) *the ordinance is in conflict with the statute. See Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255.

### Analysis of the Relevant Contested Provisions in H.B. 62

**1) Contested Provision R.C. 5747.502 – The Spending Setoff**

{¶ 15} As previously stated, H.B. 62 requires a local authority operating a traffic photographic enforcement program during the preceding fiscal year to file a report with the tax commissioner that includes a detailed statement of the civil fines the local authority collected from drivers for any violations of any local ordinance that were based upon evidence recorded by a photo-monitoring device.   R.C. 5747.502(B).   A local authority's payments from the state local government fund were then to be reduced in an amount equal to the fines reported in the report to the tax commissioner.   R.C. 5747.502(C).   If the local authority did not file a report as required, all payments of local government funds to the locality were to cease until a report was filed.   R.C. 5747.502(D).   An amount equal to the payments withheld, except for fines incurred in school zones, was then to be deposit into an Ohio highway and transportation safety fund.   R.C. 5747.502(F).   An amount equal to payments withheld for violations in school zones was to be paid to the local authority to be used specifically for school safety purposes.   R.C. 5747.502(C)(4).

{¶ 16} With respect to R.C. 5747.502(C), (D), and (F), the Ohio Supreme Court recently held the following in *Newburgh,* Ohio Slip Opinion No. 2022-Ohio-1642, __ N.E.3d __:

> The spending setoff reduces the amount that the municipality would otherwise receive from the local-government fund by the amount of traffic-camera fines that the municipality collected. It does not conflict with municipal-home-rule authority, because it does not prohibit municipalities from enforcing their traffic laws with cameras. The spending setoff may

disincentivize municipalities from adopting or continuing to use traffic cameras, but it does not forbid what municipal law permits any more than the creation of a financial incentive to adopt the use of traffic cameras would require a municipality to do what its own laws proscribe. The setoff provision does not restrict municipalities from enacting or enforcing local laws, nor does it preempt or invalidate those laws. Therefore, there is no conflict between the spending setoff and the municipalities' ordinances adopting the use of cameras to enforce traffic laws.

*Id.* at ¶ 30.

{¶ 17} Therefore, because *Newburgh* found "no conflict between the spending setoff and the municipalities' ordinances adopting the use of cameras to enforce traffic laws," the trial court's finding that the spending setoff provision violated the Home Rule Amendment was made in error.

**2) Contested Provision R.C. 4511.099(A) – The Deposit Requirement**

{¶ 18} R.C. 4511.099(A) states in pertinent part:

[W]hen a certified copy of a ticket issued by a local authority based on evidence recorded by a traffic law photo-monitoring device is filed with the municipal court or county court with jurisdiction over the civil action, the court shall require the local authority to provide an advance deposit for the filing of the civil action. The advance deposit shall consist of all applicable court costs and fees for the civil action. The court shall retain the advance deposit regardless of which party prevails in the civil action and shall not

charge to the registered owner or designated party any court costs and fees for the civil action.

{¶ 19} Regarding R.C. 4511.099(A), *Newburgh* held as follows:

Article IV, Sections 1 and 15 of the Ohio Constitution grant the General Assembly the authority to create statutory courts, and we have recognized that "[n]one of the various provisions of article XVIII of the Constitution of Ohio [the Home Rule Amendment] are effective to abridge the sovereignty of the state over municipalities in respect to its courts." *State ex rel. Ramey v. Davis*, 119 Ohio St. 596, 165 N.E. 298 (1929), paragraph two of the syllabus; *accord Behrle v. Beam*, 6 Ohio St.3d 41, 42, 451 N.E.2d 237 (1983).

The General Assembly has granted municipal and county courts exclusive jurisdiction over civil actions for violations of a state traffic law or municipal traffic ordinance, R.C. 1901.18(A)(14), 1907.02(C), and 1901.20(A)(1), and the deposit requirement ensures that municipalities, like other private litigants, will shoulder the burden that their litigation creates. "The power to create a court necessarily includes the power to define its jurisdiction and to provide for its maintenance." *Ramey* at 599, 165 N.E. 298. The deposit requirement may make litigating violations based on traffic cameras more expensive for municipalities. *Nonetheless, the deposit requirement does not conflict with local law, because it does not prohibit municipalities from using cameras to enforce their traffic laws.*

(Emphasis added.)    *Id.* at ¶ 32-33.

{¶ 20} Similar to its analysis of the spending setoff provision, the Supreme Court in *Newburgh* found that the "deposit requirement does not conflict with local law, because it does not prohibit municipalities from using cameras to enforce their traffic laws." *Id.* at ¶ 33.   Therefore, the trial court's finding that the deposit requirement provision in R.C. 4511.099(A) violated the Home Rule Amendment was error.

**3) Contested Provision R.C. 4511.096(C) – Certified Copy Requirement**

{¶ 21} R.C. 4511.096 sets forth the officer review requirements of a traffic law photo monitoring device and contains the following contested provisions:

(C) Within thirty days of the traffic law violation, the local authority or its designee may issue and send by regular mail a ticket charging the registered owner with the violation. The ticket shall comply with section 4511.097 of the Revised Code. If the local authority mails a ticket charging the registered owner with the violation, the local authority shall file a certified copy of the ticket with the municipal court or county court with jurisdiction over the civil action.

{¶ 22} Thus, pursuant to R.C. 4511.096(C), if a local authority issues and mails a ticket charging the registered owner of a vehicle with a violation based upon evidence from a traffic camera, the local authority must also file a certified copy of the ticket with the municipal court or county court vested with jurisdiction over the civil action.   Applying the rationale of *Newburgh*, we find that R.C. 4511.096(C) does not violate the Home Rule Amendment.   Although the certified copy requirement "may make litigating violations

based on traffic cameras more expensive for municipalities," the requirement "does not conflict with local law, because it does not prohibit municipalities from using cameras to enforce their traffic laws." *Id.* at ¶ 33. Therefore, the certified copy requirement "does not limit or otherwise infringe upon any municipal authority granted by the Home Rule Amendment," and it was error for the trial court to find that it did in the instant case.

{¶ 23} In light of the foregoing, the State's first assignment of error is sustained.

{¶ 24} The State's second assignment of error is as follows:

THE TRIAL COURT ERRED IN FINDING THAT PROVISIONS OF H.B. 62 VIOLATE THE SINGLE SUBJECT RULE BECAUSE IT FAILED TO APPLY THE PROPER TEST THAT LOOKS ONLY FOR A BLATANT DISUNITY OF SUBJECT MATTER BETWEEN THE CHALLENGED PROVISIONS AND THE REST OF THE BILL AND, INSTEAD, USURPED THE LEGISLATURE'S DISCRETION BY LOOKING TO THE SIGNIFICANT AND CONTROVERSIAL NATURE OF THE CHALLENGED LAWS.

{¶ 25} In it second assignment, the State argues that the trial court erred when it found that the contested provisions in H.B. 62 violated the one-subject rule.

{¶ 26} The one-subject rule is contained in Section 15(D), Article II of the Ohio Constitution, which provides: "No bill shall contain more than one subject, which shall be clearly expressed in its title." "The one-subject provision was incorporated into the Ohio Constitution of 1851 as an integral part of the efforts of the Second Constitutional Convention to rein in the inordinate powers that were previously lodged in the General

Assembly and to ultimately achieve a proper functional balance among the three branches of our state government." *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, ¶ 29. As the Ohio Supreme Court explained in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 495, 715 N.E.2d 1062 (1999):

> The one-subject rule was added to our Constitution in 1851. It was one of the proposals resulting from the efforts of the Second Constitutional Convention, of 1850-1851. See Kulewicz, The History of the One-Subject Rule of the Ohio Constitution (1997), 45 Cleve.St.L.Rev. 591, 591-593. The genesis of support for this rule had its roots in the same concerns over the General Assembly's dominance of state government that formed the most significant theme of the Constitution of 1851. These concerns, illustrated earlier in this opinion, resulted in the placement of concrete limits on the power of the General Assembly to proceed however it saw fit in the enactment of legislation. The one-subject rule is one product of the drafters' desire to place checks on the legislative branch's ability to exploit its position as the overwhelmingly pre-eminent branch of state government prior to 1851.

{¶ 27} The purpose of the one-subject rule is "to prevent logrolling -- '* * * the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately.' " *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142, 464

N.E.2d 153 (1984).

{¶ 28} Only "[a] manifestly gross and fraudulent violation of the one-subject provision contained in Section 15(D), Article II of the Ohio Constitution will cause an enactment to be invalidated." *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 49, citing *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, paragraph one of the syllabus. As long as common purpose or relationship exists between the topics, the mere fact that a bill embraces more than one topic will not be fatal. *Id.* It is the disunity of subject matter, rather than the aggregation of topics, that causes a bill to violate the one-subject rule. *Id.* The one-subject rule is not directed at plurality but at disunity in subject matter. *State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO* v. *State Emp. Relations Bd.*, 104 Ohio St.3d 122, 2004-Ohio-6363, 818 N.E.2d 688, ¶ 28.

### 1) R.C. 1901.20(A)(1) and R.C. 1907.02(C)

{¶ 29} Initially, we must determine whether there was a violation of the one-subject rule within the context of an appropriations bill. *Dayton I,* 2021-Ohio-967, 170 N.E.3d 502, at ¶ 52. "[T]he analysis of the one-subject rule with respect to appropriation bills can be complicated because appropriations bills 'encompass many items, all bound by the thread of appropriations.' " *Rumpke Sanitary Landfill, Inc.* v. *Ohio*, 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826, ¶ 16 (1st Dist.), quoting *Simmons-Harris v. Goff*, 86 Ohio St.3d 1, 16, 711 N.E.2d 203 (1999).

{¶ 30} In our view, the exclusive-jurisdiction provisions in R.C. 1901.20(A)(1) and R.C. 1907.02(C) "directly relate to the authorization and conditions of the operation of

photo-enforcement programs." *Id.* at ¶ 67. Furthermore, Dayton's photo-enforcement program is explicitly related to transportation safety, which is also directly related to the stated purpose of the appropriations bill set forth in H.B. 62. *Id.* Accordingly we find that the trial court erred when it denied the State's motion for summary judgment, finding that the contested provisions R.C. 1901.20(A)(1) and R.C. 1907.02(C) in H.B. 62 violated the one-subject rule.

{¶ 31} Additionally, considerations regarding budgeting, taxation, revenue, and local government funding are clearly addressed throughout the contested provisions of H.B. 62. Specifically, R.C. 5747.502, the spending setoff provision, R.C. 4511.096(C), the certified copy requirement, and R.C. 4511.099(A), the deposit requirement, all directly relate to the authorization and conditions of the operation of a traffic photo-enforcement program. Simply put, Dayton's traffic photo-enforcement program is explicitly related to transportation budgeting, taxation, revenue, and local government funding, which is also directly related to the stated purpose of the setoff and requirements provisions set forth in H.B. 62. Accordingly we find that the trial court erred when it denied the State's motion for summary judgment, finding that that contested provisions in H.B. 62 violated the one-subject rule.

{¶ 32} The State's second assignment of error is sustained.

{¶ 33} The State's two assignments of error are sustained. Therefore, the trial court's judgment is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.

. . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.


Copies sent to:

John C. Musto
Garrett M. Anderson
Iris Jin
Hon. Mary Katherine Huffman